IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KASEY NICOLE APPLETON      : Civil No. 1:25-CV-1861
                                        :

     Plaintiff,                        :

                                     :

       v.                                :

                                     : (Chief Magistrate Judge Bloom)

FRANK BISIGNANO,              :
Commissioner of Social Security,       :

                                     :

     Defendant.                      :

## MEMORANDUM OPINION

## I.    Introduction

Kasey Nicole Appleton filed an application under Title II of the Social Security Act for disability and disability insurance benefits on June 7, 2022.[1] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Appleton was not disabled from her alleged onset date of June 8, 2021, through February 19, 2025, the date of the ALJ's decision.[2]

Appleton now appeals this decision, arguing that the decision is not supported by substantial evidence. After a review of the record, we

---

[1] Tr. 85.
[2] Tr. 17.

conclude that the ALJ's decision is not supported by substantial evidence. Therefore, we will remand this matter for further consideration by the Commissioner.

## II.   Statement of Facts and of the Case

Appleton filed for disability and disability insurance benefits, alleging disability due to the impairments of low vision, seizures, non-displaced fracture of wrist, visual field defect, depression, attention deficit hyperactivity disorder ("ADHD"), elevated platelet count, and Achilles tendinitis right lower extremity.[3]  Appleton was 33 years old at the time of her alleged onset of disability, had at least a high school education, and had no past relevant work.[4] [5]

The medical record regarding Appleton's impairments revealed that Appleton complained of pain and swelling in her right ankle to

---

[3] Tr. 86.

[4] Tr. 28.

[5] Appleton did not outline the pertinent medical/vocational evidence of record in her brief as required by local rules.  (*See* M.D. Pa. L.R. 83.40.4(a)).  We will therefore forego recitation of the administrative record, except for those portions of the record most germane to our analysis.

Dr. Fotis Mystakas at WellSpan Orthopedics – Lebanon.[6]  Dr. Mystakas wrote that an MRI of Appleton's ankle showed soft tissue swelling and tendinosis, and noted she has been dealing with pain in this ankle "for many years" but that it had worsened after a recent trip to Florida.[7] Appleton was provided with an ankle brace and referred to physical therapy.[8]

In July of 2021, Appleton reported pain, numbness, and tingling in her right foot to Dr. Justin Fisher at the Ephrata Community Hospital.[9] He conducted an EMG test of Appleton's lower right extremity that was "mildly" abnormal, in that her right peroneal motor amplitude was decreased but the results were otherwise normal.[10]  Dr. Fisher speculated this result indicated possible atrophy of the extensor digitorum brevis muscle.[11]

---

[6] Tr. 650-54.
[7] Tr. 652.
[8] *Id.*
[9] Tr. 567.
[10] *Id.*
[11] *Id.*

Appleton underwent an endoscopic gastrocnemius release on her right ankle in September of 2021.  Dr. Ian Yarger performed the surgery and diagnosed Achilles peritendinitis with edema.[12]

Records throughout 2022 and 2023 consistently demonstrated Appleton's gait was intact and normal.[13]  A September 2022 MRI showed Achilles peritendinitis, edema, and tissue swelling around the ankle.[14] Records from October 2022 showed mildly restricted range of motion in the ankle, but a December 2022 EMG was normal.[15]

In July of 2023, Appleton sought surgical relief for her leg pain.  She told Dr. Paul Juliano at the Milton S. Hershey Medical Center that she was suffering severe spasms and swelling, but Dr. Juliano found she did not show evidence of sural nerve symptoms.[16]  In August of 2023, Dr. Juliano performed an open gastric recession on Appleton's right leg.[17] The surgery was performed because Appleton had residual equinus

---

[12] Tr. 575.
[13] *See, e.g.,* tr. 697, 701, 1068.
[14] Tr. 868.
[15] Tr. 860, 867.
[16] Tr.1239.
[17] Tr. 1225.

secondary to a previous attempted gastric lengthening.[18] At her six-week follow up, Appleton reported minimal pain and that the surgery had "pretty much resolved" her leg spasms.[19] During a visit to a neurologist around this time, Appleton presented with a normal, routine gait.[20]

In January of 2024, while preparing for brain surgery to resolve a Chiari malformation, Appleton reported numbness in her right foot.[21] Appleton presented with antalgic gait for the first time in March of 2024, then again in May, and twice more in June.[22] At an office visit in September, Dr. Pawel Ochalski noted Appleton had facet arthropathy at the L4-5 level with lateral recess narrowing early desiccation of the L4-5 disc.[23] In November of 2024, Appleton reported to Dr. Louis Di Salvo that she was suffering ankle pain extending into the lateral foot, and Dr. Di Salvo noted swelling, tenderness to palpitation, and edema.[24] He ordered an EMG, which ultimately revealed right-sided foraminal entrapment of

---

[18] *Id.*
[19] Tr. 1244.
[20] Tr. 1751
[21] Tr. 2199.
[22] Tr. 2286, 2359, 2393, 2423, 2439.
[23] Tr. 2265.
[24] Tr. 2262.

the sural nerve.[25]   In January of 2025, Dr. Efkan Colpan counseled Appleton to try a spinal cord stimulator before a surgical option.[26]

The ALJ held a pair of hearings on Appleton's disability application on January 24, 2024,[27] and February 5, 2025.[28]   Appleton and a Vocational Expert ("VE") both appeared and testified at these hearings.[29] Following these hearings, on February 19, 2025, the ALJ issued a decision denying the plaintiff's application for disability benefits.[30]  The ALJ first concluded that Appleton met the insured status requirement through December 31, 2025, and had not engaged in substantial gainful activity since her alleged onset date of June 8, 2021.[31]  At Step 2 of the sequential analysis that governs disability claims, the ALJ found that the plaintiff suffered from severe impairments of occipital neuralgia, chronic pain syndrome, fibromyalgia, obesity, sural nerve entrapment, lumbar degenerative disc disease, complex regional pain syndrome,

---

[25] Tr. 2252.
[26] Tr. 2251.
[27] Tr. 65-84.
[28] Tr. 39-64.
[29] Tr. 39-64, 65-84.
[30] Tr. 17-33.
[31] Tr. 19.

neurocognitive DO, depressive DO, generalized anxiety disorder, and ADHD.[32]  At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[33]

Between Steps 3 and 4, the ALJ then concluded that Appleton:

> [H]a[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally push/pull with her right upper extremity, occasionally climb ramps and stairs, kneel, crouch, and crawl, never climb ladders, ropes, and scaffolds, she can perform occasional handling/fingering with her right upper extremity, and should avoid concentrated exposure to dangerous machinery and unprotected heights. She is limited to simple and routine tasks, involving only simple, work-related decisions.[34]

In reaching this residual functional capacity ("RFC") determination, the ALJ considered the objective medical record, the medical opinion evidence, and Appleton's reported symptoms.  With respect to the medical opinion evidence,[35] the ALJ was unpersuaded by

---

[32] *Id.*

[33] Tr. 20.

[34] Tr. 22.

[35] Because Appleton appeals exclusively on the basis of the ALJ's treatment of evidence related to her physical health, we decline to discuss Appleton's mental health or the medical opinions thereof.

the opinion of the functional capacity evaluator, Steven Broker.  The ALJ noted Broker's own conclusions explained his examination results "only have fair and not great validity due to inconsistencies [,]" in part because Appleton was mid-recovery from one surgery and in preparation for another.[36]  The ALJ further noted that Broker recommended a follow up evaluation after Appleton had recovered from those surgeries, as it was presently "difficult to determine her true functional ability [.]"[37]

The ALJ also considered Dr. Charles Hubbard's September 2022 opinion.[38]  Dr. Hubbard opined Appleton had no visual limitations, some limitations to carrying and lifting, and was capable of standing and/or walking about six hours in an eight hour workday.[39]  The ALJ was persuaded by Dr. Hubbard's opinion, explaining that it was generally consistent with the record and with Appleton's treatment records, and was adequately supported.[40]

---

[36] Tr. 26, 1644.

[37] *Id.*

[38] Tr. 27.

[39] Tr. 27, 93-95.

[40] Tr. 27.

8

Next, the ALJ considered the 2023 opinion of Dr. Karen Sarpolis, and found it partially persuasive. The ALJ was not persuaded by Dr. Sarpolis's conclusion that Appleton would be limited to four hours of standing and/or walking in an eight-hour day.[41] The ALJ found that limitation was inconsistent with Dr. Hubbard's conclusions and examinations and was not fully supported. He noted that while Appleton may have had such limitations during recovery from leg surgeries, the record did not support that degree of limitation existing for a period of at least 12 continuous months post onset date.[42] The ALJ found the rest of Dr. Sarpolis' opinion to be persuasive, supported by the record, and generally consistent with the state agency findings.[43]

Nurse Practitioner Karena Hammond opined that Appleton could only stand for two hours and walk for one, but the ALJ found those limitations were not supported by Hammond's own examination findings.[44] He also concluded Hammond's opinion was not consistent

---

[41] Tr. 28.

[42] *Id.*

[43] *Id.*

[44] Tr. 28, 1212.

with state agency findings and ultimately found her opinion unpersuasive.

With respect to Appleton's symptoms, the ALJ found that her statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence.[45] At her first hearing in January of 2024, Appleton testified that she initially stopped working because of problems with her legs.[46] The pain often woke her up at night and required multiple surgeries.[47] She explained she suffered both "white area" migraines and cluster headaches due to a Chiari malformation, could have as many as 50 headaches in a day, and required brain surgery to alleviate those symptoms.[48] She further discussed her pain from fibromyalgia, her hearing loss, and how her symptoms had rendered her unable to cook dinner or watch films.[49]

---

[45] Tr. 27.
[46] Tr. 71.
[47] Tr. 71-72.
[48] Tr. 74-76.
[49] Tr. 76-81.

10

Appleton testified again in February of 2025 and said her overall condition since her prior testimony had become "significantly worse."[50] She explained how she contracted cellulitis from a back stimulator trial aimed to alleviate her leg pain, was diagnosed with a sural nerve entrapment in her leg, and was scheduled for another spinal cord stimulator trial in the coming weeks.[51] She testified that her leg was "on fire all the time" from pain, her ankle would swell up from walking just two blocks, and she had not had success with assistive devices.[52] She described her brain surgery, intended to alleviate pressure inside her head and prevent the occurrence of additional strokes.[53] Appleton said her abilities to sit, stand, and walk were "definitely worse" than during her prior hearing, that the use of a brace allowed her to stand for up to an hour, and that her nerve impingement was the main source of trouble

---

[50] Tr. 42.
[51] Tr. 42-43.
[52] Tr. 44-47.
[53] Tr. 47-48.

11

with walking and standing.[54]  She explained her abilities to cook, shop, and manage personal hygiene had diminished.[55]

The ALJ ultimately found Appleton's testimony to be inconsistent with the objective clinical findings.[56]  The ALJ recounted the objective evidence during the alleged disability period, including that test results had produced normal results or indicated "less problems" than Appleton alleged.[57]  He highlighted exams showing her hands were in good health, her wrist had continued to heal and showed "no peripheral nerve damage," and that her wrist injury was likely a sprain and not a tear.[58] The ALJ also noted evidence of normal EMG test results on Appleton's right foot, and examination notes showing "no gross instability" and "no concern for ankle instability."[59]  He emphasized that Appleton's spinal MRIs showed no changes that would corresponded to her reported levels of pain, and that a brain MRI did not show any significant

---

[54] Tr. 51-52.
[55] Tr. 50-56.
[56] Tr. 22.
[57] Tr. 23.
[58] *Id.*
[59] *Id.*

abnormalities.[60]  He noted that records showed her brain surgery had led to her headaches being "more controlled."[61]  He stated that while recent records noted a "slow and somewhat antalgic gait," earlier records showed a normal gait and Appleton had not been prescribed an assistive device.[62]  Ultimately, the ALJ concluded that Appleton was not as limited as she alleged.

Having made these findings, the ALJ found at Step 4 that Appleton had no relevant past work but found at Step 5 that she could perform the occupations of usher, furniture rental consultant, and bakery conveyor worker.[63]  Accordingly, the ALJ found that Appleton had not met the stringent standard prescribed for disability benefits and denied her claim.[64]

This appeal followed.  On appeal, Appleton argues that the ALJ impermissibly based the RFC on his own medical conclusions and did not adequately explain his reasoning for finding a specific medical opinion

---

[60] Tr. 24.
[61] Tr. 25.
[62] Tr. 26.
[63] Tr. 30.
[64] *Id.*

unpersuasive.    This case is fully briefed and is therefore ripe for resolution.  For the reasons set forth below, we will remand this matter for further consideration by the Commissioner.

## III.   Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[65]  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[66]    Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[67]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing

---

[65] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[66] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[67] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

evidence."[68]    However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[69]  The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[70]

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[71]    Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[72]  Thus, the

---

[68] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[69] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[70] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

[71] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[72] *Id.*

question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[73]

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[74] Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision.[75] This does not require the ALJ

---

[73] See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[74] Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)).

[75] Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000).

to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements.[76] Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[77]

### B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[78] This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national

---

[76] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[77] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

[78] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).

economy."[79]   To receive benefits under Title II of the Social Security Act,

a claimant must show that he or she is under retirement age, contributed

to the insurance program, and became disabled prior to the date on which

he or she was last insured.[80]

In making this determination, the ALJ follows a five-step

evaluation.[81]    The ALJ must sequentially determine whether the

claimant: (1) is engaged in substantial gainful activity; (2) has a severe

impairment; (3) has a severe impairment that meets or equals a listed

impairment; (4) is able to do his or her past relevant work; and (5) is able

to do any other work, considering his or her age, education, work

experience and residual functional capacity ("RFC").[82]

Between Steps 3 and 4, the ALJ must also determine the claimant's

residual functional capacity (RFC).  RFC is defined as "that which an

individual is still able to do despite the limitations caused by his or her

---

[79]  42  U.S.C.  §423(d)(2)(A);  42  U.S.C.  §1382c(a)(3)(B);  20  C.F.R.
§§404.1505(a), 416.905(a).
[80] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[81] 20 C.F.R. §§404.1520(a), 416.920(a).
[82]20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

impairment(s)."[83]  In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[84]  Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[85]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work.[86]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[87]

---

[83] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[84] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[85] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

[86] *Mason*, 994 F.2d at 1064.

[87] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[88]   Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided."[89]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected

[88] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).
[89] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

the medical opinion based upon an assessment of other evidence.[90]  These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination.  On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[91]   Ultimately, it is our task to determine, considering the entire record, whether the RFC determination is supported by substantial evidence.[92]

## C. This Case will be Remanded.

As we have noted, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests,"[93] and the ALJ must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."[94]  We conclude that in

---

[90] *Biller*, 962 F. Supp. 2d at 778–79.
[91] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.
[92] *Burns,* 312 F.3d 113.
[93] *Cotter*, 642 F.2d at 704.
[94] *Schaudeck v. Comm'r of Soc. Sec.*, 181 F. 3d 429, 433 (3d Cir. 1999).

this matter, the ALJ's RFC determination is not supported by an adequate explanation.

After careful consideration, we conclude the ALJ did not sufficiently engage with the 2024 evidence of Appleton's leg impairments. The decision references Appleton's toe numbness and her sural nerve entrapment as established by the 2024 records but discounts them on the basis of medical records from 2022 and 2023.[95] The ALJ did find that the sural nerve entrapment was a severe impairment,[96] but it is not clear from the decision how (or if) that impairment was accounted for in Appleton's RFC. Further, the ALJ did not make any reference to records that directly state Appleton's leg issues may cause functional limitations. Records from 2024 indicate that Appleton: "[has] difficulty walking and standing due to the pain [,]"[97] "continues to have limitations with some proximal leg discomfort [,]"[98] and has "[i]nstability climbing up and down step ladders, limited ability in static standing and walking secondary

---

[95] Tr. 25.
[96] Tr. 19.
[97] Tr. 2354.
[98] Tr. 2265.

22

weakness and pain in the [right lower extremity.]"[99]  It is unclear from the text of the decision if the ALJ dismissed these concerns or overlooked them.  That ambiguity prevents us from concluding that the decision is supported by substantial evidence.

Similarly, the ALJ notes the 2024 evidence contains findings of antalgic gait,[100] but the decision only references one of the two exhibits that discuss gait issues and appears to dismiss any gait problems on the basis that Appleton was not prescribed an assistive device.[101]  The ALJ also stated that in "September 2024, a neurosurgeon noted [Appleton had] lumbar facet arthropathy with full strength in all extremities."[102] In our view, the ALJ's language implies that the positive fact (no assistive device, full strength) outweighs the negative fact (antalgic gait, lumbar facet arthropathy), and therefore Appleton has no functional limitations caused by antalgic gait or arthropathy.  But these conclusions essentially

---

[99] Tr. 2159.
[100] Tr. 2286, 2359, 2393, 2423, 2439.
[101] Tr. 26.
[102] *Id.*

amount to the ALJ making a medical determination based on his own lay opinions, which is error.[103]

Further, these errors are not harmless.  Social Security appeals are subject to harmless error analysis.[104]  Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding, . . ."[105]  Here, there was a medical opinion on record indicating that Appleton should be limited to four hours of standing or walking, which these 2024 records would seem to support.  But because the ALJ seemingly dismissed the 2024 evidence without explanation, his conclusion that Appleton could manage six hours of walking in a workday

---

[103] *See e.g., Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000).  Contrast this treatment with the treatment the ALJ gave Appleton's post-surgery headaches.  He mentioned that she reported post-surgical headaches but discounted that report by referring directly to medical records showing Appleton's headaches were "more controlled" and that she "has done well regarding her headaches."  (Tr. 25).  The clarity of explanation and clear citation to evidence supporting that explanation here gives the court confidence that this conclusion is based on substantial evidence, rather than the ALJ's own opinion.  The treatment of Appleton's leg impairment does not meet this standard.

[104] *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).

[105] *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

is not supported by substantial evidence.  Compounding this error is the fact that had the four-hour limitation been imposed, the occupations identified by the VE would all be definitionally beyond Appleton's capabilities, as they are all defined as light labor, which requires that the claimant be able to walk for "approximately 6 hours of an 8-hour workday."[106]  Thus, we conclude that these errors are not harmless.

Accordingly, a remand is required for further consideration of these issues. While we reach this conclusion, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on the ultimate outcome of this matter.  Rather, that task is left to the ALJ on remand.

---

[106] SSR 83-10, 1983 WL 31251 at *6.

## IV.   <u>Conclusion</u>

For the foregoing reasons, the decision of the Commissioner will be

REMANDED for further consideration.

An appropriate order follows.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
Chief United States Magistrate Judge

Dated June 26, 2026.

26